IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **LORENZO CLARK**    Plaintiff,    v.    **MEMPHIS ANIMAL SERVICES, and THE CITY OF MEMPHIS and UNKNOWN NAMES OF MEMPHIS POLICE OFFICERS TO BE NAMED IN THEIR INDIVIDUAL CAPACITY AS MEMPHIS POLICE DEPARTMENT OFFICERS,**    Defendants. | **Case No. 2:22-cv-02641-JTF-atc**    **Jury Demanded** |

**ORDER GRANTING IN PART AND DENYING IN PART DEFEDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant the City of Memphis's ("City") Motion for Summary Judgment, filed on August 22, 2024, with an accompanying Statement of Undisputed Material Facts. (ECF. Nos. 47, 48 & 49.) Plaintiff Lorenzo Clark filed his Response in opposition on September 19, 2024. (ECF No. 51.) Plaintiff also filed his objections to Defendant's facts and his counterstatement of the undisputed facts. (ECF Nos. 51-1 & 51-2.) Defendant filed a Reply on October 3, 2024, along with his objections to Plaintiff's proposed facts. (ECF Nos. 53 & 54.)

For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment.

1

## I.    BACKGROUND[1]

On September 24, 2021, Memphis Animal Services ("MAS") received a report that a foul odor was emitting from the yard of 1924 Baldwin Avenue (the "Baldwin Property"). (ECF No. 51-1, 1–2 ¶ 1.) At the time, MAS personnel conducted their activities pursuant to the MAS Standard Operating Procedure for Welfare Investigations. The procedure explains that the Field Supervisor should "provide quality assurance checks to ensure that the minimum response protocols are adhered to and to take corrective action when necessary," that "[i]f the animal's health is in immediate danger, the ASO must seize the pet," and that every call requires a verification that the animal has a Rabies Tag. (*Id.* at 6 ¶ 19.) Further, it details the specific observable conditions that indicate that an animal's health is in immediate danger such as a lack of access to adequate shelter and water, the BCS score of the animal's bodily condition, and the lack of compliance with spay/neuter and vaccination laws. (*Id.*) The Standard Operating Procedure for Dog Fighting describes signs of dog fighting include, *inter alia*, "most often pitbulls," "thick, heavy collars and chains," "multiple dogs on the property," "injuries to the face," and "Dog fighting and training paraphernalia." (*Id.*)

MAS personnel responded to the Baldwin Property where at least twelve (12) dogs, including an Exotic Bully, were being kept. (*Id.* at 1–2 ¶ 1.) Acting on the report, MAS Officer Christa Smith, along with others, went there to conduct a welfare check. (*Id.*) They entered a neighbor's backyard to observe the condition of the dogs on the Baldwin Property. (*Id.* at 2 ¶ 2.) The Parties dispute whether officers were able to view the entirety of the Baldwin Property's backyard from the neighbor's backyard. (ECF No. 54, 4–5 ¶ 8.)

While MAS officers were observing the dogs, Plaintiff walked into the backyard and told them

---

[1] The Court only discusses the facts that are pertinent to Defendant's Motion. The facts are taken from the Parties' filings. Any disputes of fact are noted.

2

to leave his property.[2] (*Id.* at 5 ¶¶ 9.) The Parties dispute whether officers were already on Plaintiff's property at this time or still in the neighbor's yard. (*Id.*) After this confrontation, Plaintiff left for work. (*Id.* at ¶ 10.) From the neighbor's yard, officers claim to have observed that dogs lacked rabies tags, were being restrained by visibly short, heavy chains, and more than three (3) dogs lacked access to water. (ECF No. 51-1, 2 ¶ 3.) Plaintiff disputes Defendant's purported observations, responding that from their observations, no dog appeared to be in immediate harm. (*Id.*) After observing the dogs' condition, MAS officers decided to enter the Baldwin Property to seize the dogs. (*Id.* at ¶ 4.) They called Memphis Police Department ("MPD") to accompany them. (ECF No. 54, 5 ¶ 11.) Once on the property, the officers observed: strength training equipment; ten (10) dogs that had no access to palatable drinking water; that none of the dogs were wearing rabies tags; at least one (1) of the Plaintiff's dogs did not have access to adequate shelter; at least one (1) of the dogs had old wounds on his face/snout; and at least one (1) of the dogs was wearing a weighted collar. (ECF No. 51-1, 3–4, ¶¶ 6, 8–12.) Based on their observations, Smith and MAS Supervisor David Rose seized the dogs. (ECF No. 54, 10 ¶ 24.)

In her report, Smith noted that only one impounded dog had a large, weighted collar. (*Id.* at 9 ¶ 22.) Later, she testified that Plaintiff's dogs scored 3 out of 9 on the body condition scale ("BCS"), with one dog scoring 2 out of 9, but none were emaciated, that no dog was in immediate danger, that she did not observe any emergency circumstances from the neighbor's fence and communicated no emergency to MPD.[3,4] (*Id.* at 7–8 ¶ 16.) She also testified that she had authority enter private property to remove animals if any violation put their welfare at risk; she also indicated

---

[2] The Parties dispute whether Plaintiff was an owner and resident of the Baldwin Property. (ECF No. 54, 1–3 ¶¶ 1–2.)

[3] Defendant admits this fact only for the purpose of this motion and clarifies that it is unclear if Smith understood "immediate danger" to mean that veterinary care was required or if that condition meant that the exigent circumstances exception to the Fourth Amendment's warrant requirement applied. (*Id.* at 6 ¶ 14.)

[4] Smith testified, and the Parties agree, that the average range for the healthiest dogs is 4 out of 9 on the BCS. (*Id.* at 8 ¶ 17.)

(*Id.* at 6–7 ¶¶ 13–15.)

Plaintiff alleges that, unbeknownst to him, he was required to pay an "impound acknowledgement fee." When Plaintiff failed to pay the fee, the dogs became property of the City. (ECF No. 51-1, 4 ¶ 14.) It is disputed whether Plaintiff had notice that he had three working days to reclaim his dogs and pay the fee.[5] (*Id.*) (ECF No. 54, 12 ¶ 30.) On October 6, 2021, the Shelby County Environmental Court imposed a $10.00 fine and ordered Plaintiff to lengthen the dog chain to the required 6 feet. (*Id.* at 14–15 ¶ 39.)

On October 12, 2021, Plaintiff filed for an injunction in the Circuit Court of Shelby County, Case No. CT-4119-21, and a hearing was set for October 29, 2021. (ECF No. 51-1, 5 ¶ 16.) When Plaintiff arrived for the hearing, he was arrested and charged with eleven (11) counts of animal cruelty and three (3) counts of dog fighting. (ECF No. 54, 16–17 ¶¶ 44–45, 47) On November 3, 2021, the Circuit Court issued a temporary injunction barring MAS from altering or disposing of the dogs. (ECF No. 51-1, 5 ¶ 17.) The Circuit Court issued a permanent injunction on December 3, 2021, conditioning the release of Plaintiff's dogs on a similar order of release by the General Sessions Court. (*Id.* at ¶ 18.) On April 14, 2022, the General Sessions Court found no probable cause, dismissed all charges against Plaintiff, and ordered the return of his dogs.[6] (ECF No. 54, 17 ¶ 48.) On April 17, 2022, pursuant to the General Sessions Court order, Defendant MAS released seven (7) dogs to Plaintiff.[7] (*Id.* at ¶ 49.) MAS euthanized three (3) of Plaintiff's dogs and transferred the Exotic Bully out of their care to a new owner; the Parties dispute whether these events took place before the issuance of the temporary injunction. (ECF No. 51-1, 4–5 ¶ 15.)

---

[5] Smith testified that a Notice to Comply ("NTC") bearing an incorrect address ("1930 Baldwin") was left at the Baldwin Property located at 1924 Baldwin. (*Id.* at 10 ¶ 27.)
[6] Parties dispute whether the General Sessions Court's finding of no probable cause was in relation to charges against Plaintiff or the seizure of the dogs. (*Id.* at 17 ¶ 48.)
[7] Parties note the incorrect year in their filings.

4

## II.     LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the facts in the record and reasonable inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once a properly supported motion for summary judgment has been filed, the party opposing summary judgment must show that there is a genuine dispute of material fact by pointing to evidence in the record or arguing that the moving party is not entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c)(1). "When confronted with a properly supported Motion for Summary Judgment, the party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact." *Cloverdale Equipment Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). The opposing party "cannot rest solely on the allegations made in [his] pleadings." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009) (quoting *Skousen v. Brighton High Sch.*, 305 F.3d 520, 527 (6th Cir. 2002)).

A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court's role is not to weigh evidence or assess the credibility of witnesses, but simply to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619, 623 (6th Cir. 2014) (quoting *Anderson*, 477 U.S. at 251–52).

### III. ANALYSIS

**A. Fourth Amendment Claim**

Defendant proposes several arguments in its Motion and Reply. First, it seems to argue that Plaintiff does not have standing to bring the Fourth Amendment claim because, at the time of the initial search and animal seizure, officers reasonably believed Plaintiff did not own or reside at the Baldwin Property. (ECF No. 53, 4–5.) Defendant also contend the officers' actions were justified under the plain view and exigent circumstances exceptions. (ECF No. 48, 4–6.) It further avers that the officers had an objectively reasonable—even if later mistaken—belief that an exigency existed relative to the dog chains appearing to be too short on the day of seizure. (ECF No. 53, 3–4.) Contrarily, Plaintiff claims he owned and resided at the Baldwin Property at the time of the incident, raising a significant factual dispute. (ECF No. 51-2, 1 ¶ 1.) He also contends that: (1) his dogs' living conditions did not present an immediate danger that would qualify as an exigency; (2) any evidence discovered after the unlawful entry is exempt from the plain-view exception; and (3) the officers had nearly five (5) hours at the scene to obtain a search warrant. (ECF No. 51, 11.)

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures. U.S. Const. amend. IV. Like a home, a dog is property that entitles the owner to Fourth Amendment protections and the unreasonable seizure of a dog is a violation of the Fourth Amendment. *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 566 (6th Cir. 2016). To have "standing" to bring a Fourth Amendment claim, a claimant must show that they manifested an actual, subjective expectation of privacy in the area to be searched or the thing seized, and that the expectation is one that society is prepared to recognize as legitimate. *See United States v. Pollard*, 215 F.3d 643, 647 (6th Cir. 2000). A warrantless search or seizure is per se unreasonable unless the government can show the existence of at least one exception to the warrant

requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 474–75 (1971). Plain view and exigent circumstances are examples of such exceptions. The plain view exception requires that the officer be lawfully located in a place from which the evidence can be plainly seen and have a lawful right of access to the evidence itself. *See Horton v. California*, 496 U.S. 128, 137 (1990). In addition, an officer may conduct a warrantless search or seizure where exigent circumstances exist, that is where prompt action is required and seeking a warrant would be impracticable, such as when there is a serious injury or threat to life. *Kovacic v. Cuyahoga Cnty. v. Dep't of Children & Family Servs.*, 724 F.3d 687, 695 (6th Cir. 2013). The Sixth Circuit has recognized immediate danger to the health and safety of animals as an exigent circumstance. *See United Pet Supply, Inc. v. City of Chattanooga, Tenn.*, 768 F.3d 464, 490 (6th Cir. 2014); *King v. Montgomery Cnty., Tennessee*, 797 F. App'x 949, 956 (6th Cir. 2020).

### 1. Standing to Object

Defendant claims that Plaintiff lacks standing to bring his Fourth Amendment claim because the MAS officers reasonably believed that Plaintiff's aunt owned and resided at the Baldwin Property. (ECF No. 53, 4–5.) In support, it offers a MAS officer's testimony that she: "asked if [Plaintiff] lived there and he told me his aunt lives there,"[8] (*Id.*), and the address listed on Plaintiff's ID when he entered MAS premises on September 26, 2021, a few days after the incident. Without more, Defendant's argument fails. First, at the time of the incident, MAS had not obtained any independent information or documentation that showed who resided at the Baldwin Property, much less that Plaintiff did not live there. Also, Plaintiff's response to officers does not negate a reasonable inference that he resided there alongside his aunt. As noted above, the test for Fourth

---

[8] Parties dispute whether Plaintiff resided at or owned the Baldwin Property as of 24 September, 2021, the date of the incident. (ECF No. 54, 1 ¶ 1.) In their objection to Plaintiff's proposed statement of additional undisputed facts, Defendant notes that Plaintiff had not yet inherited the property as of the incident date. (*Id.*)

Amendment standing turns on whether there is a reasonable expectation of privacy, not whether the officers' beliefs as to the facts were reasonable. Plaintiff has met the test. (ECF No. 51, 2 ¶ 4.) Based on the record, the Court finds that Plaintiff has established an actual, subjective expectation of privacy in the area that was searched and the animals that were seized; an expectation that society is prepared to recognize as legitimate.

### 2. Entry Onto the Property and Seizure

Defendant contends that the plain view exception applies. For that to be the case, officers' entry into the Baldwin Property's backyard would have to have been lawful. *See United States v. Taylor*, 248 F.3d 506, 512 (6th Cir. 2001). Defendant did not have a search warrant to support their entry onto the property. Thus, they had to provide an exception to the warrant requirement. Clearly, the Defendant did not obtain a consent to search from an owner or occupier of the premises. However, Defendant points to an alternative—the plain view exception which ultimately provided exigent circumstances. Defendant contends that the dogs' living conditions—as observed from the neighbors' backyard—rose to the level of an exigency. Thus, this Court must evaluate whether "an objectively reasonable officer confronted with the same circumstances could reasonably believe that exigent circumstances existed." *United Pet Supply*, 786 F.3d at 489 (internal quotation omitted.)

In support of exigency, Defendant relies primarily on two (2) cases: *United Pet Supply* and *Sanders*. In *United Pet Supply*, the Sixth Circuit found exigent circumstances when pet store animals were found to be dehydrated, in high heat and without water, one hamster had a large cut that had not received medical care, and the store employees were unaware that a hamster had died in its cage. 786 F.3d at 490. Similarly, in *Sanders*, using the reasoning from *United Pet Supply*, the District Court determined that an officer's warrantless entry into a plaintiff's property was

8

reasonable when the officer could see the plaintiff's dogs in plain view from a neighbor's yard, and the dogs' condition was immediately apparent. 605 F.Supp.3d at 982. There, the officer could observe trash, dog feces, and extremely thin and underfed dogs strewn across the yard, and no apparent clean water, food, or airconditioned shelter from the 94-degree heat. *Id. See also King,* 797 F. App'x at 955 (holding that officer's warrantless entry into a home and seizure of animals in response a complaint, even if the officer was mistaken about the seriousness of the dogs' situation, was nevertheless justified by exigent circumstances).

Here, the parties dispute the facts concerning condition of the dogs as well as the state of the yard. The MAS officers claim they were able to observe from the neighbor's yard dogs not wearing rabies tags, restrained by heavy, short chains, and that more than three (3) dogs did not have access to water. (ECF No. 51-1, 2 ¶ 3.) Based on these observations, they decided to enter the property. (*Id.* at ¶ 4.) But Plaintiff disputes Defendant's assertions, citing MAS Officer Smith's testimony: "it was evident that there was not drinkable water for 'most' that I could see." (*Id.* at ¶ 3.) Plaintiff also states there was only one dog with a chain that was less than the required 6 feet. (*Id.* at ¶ 4.)

Although Plaintiff provides conflicting facts, at the time of the incident, Defendant's assertions about what was observed support their conclusion that exigent circumstances existed regarding the condition of the dogs and immediate intervention was necessary. The Court finds that the MAS officers were justified in their entry onto the Baldwin Property to investigate the living condition of the dogs. However, there are genuine factual disputes pertaining to Plaintiff's Fourth Amendment claim with regard to seizure of the dogs. Thus, the Court **DENIES** Defendant's Motion for Summary Judgment on this issue.

### B. Fourteenth Amendment Claims

In his Complaint and Response, Plaintiff alleges both substantive and procedural due process

9

violations. (ECF No. 1, 1 ¶ 1.) Defendant argues that Plaintiff may not seek relief under the Fourteenth Amendment because he has alleged sufficient facts to trigger a Fourth Amendment analysis of the officers' warrantless entry and initial seizure of his dogs. (ECF No. 48, 7). Plaintiff responds that his Fourth Amendment claim only pertains to the search and seizure of his property, not Defendant's failure to give notice about the procedure for Plaintiff to reclaim his dogs from impoundment. (ECF No. 51, 11.) Additionally, he contends that his malicious prosecution claim constitutes either an independent substantive due process violation or another Fourth Amendment violation. To this Defendant notes that Plaintiff's Complaint did not raise a failure to give notice claim under his Fourteenth Amendment claims, and that Plaintiff is attempting to bootstrap his time-barred malicious prosecution claims to his substantive due process claims. (ECF No. 53, 6.)

The Court agrees with Defendant as to the failure to give notice claim. In his Complaint, Plaintiff's Fourteenth Amendment claims only allege facts regarding the initial search and seizure of the dogs on the Baldwin Property, which is properly analyzed under the Fourth Amendment. *See Graham v. Connor*. 490 U.S. 386, 395 (1989) (holding that claims arising from a set of facts relating to search and seizure are properly analyzed under the Fourth Amendment, rather than the more generalized Fourteenth Amendment). Plaintiff does not support his mention of his procedural due process claim with any specifics.[9] At the summary judgment stage, it would be unfair to permit Plaintiff to essentially raise a new legal claim in response to Defendant's Motion for Summary Judgment. *See Desparois v. Perrysburg Exempted Village School Dist.*, 455 F. App'x 659, 665–66 (6th Cir. 2012) (affirming district court's denial of two new claims asserted in the plaintiff's summary judgment response); *see also Watkins v. Saemenes*, No. 18-2289, 2019 WL 1052041, *5

---

[9] Even Plaintiff's proposed amended complaint, which was subsequently denied by this Court, did not mention the failure to give notice claim or allege specific facts giving rise to the failure to notice claim. (ECF No. 18-3, 8–10.)

(W.D. Tenn. Feb. 8, 2019) (collecting cases holding the same).

As to Plaintiff's § 1983 malicious-prosecution claim, the Court finds that Fourteenth Amendment's substantive due process guarantee cannot support it. *See Albright v. Oliver*, 510 U.S. 266, 275 (1994) (plurality holding that such a claim must be analyzed under the Fourth Amendment, but leaving open the question of whether the claim could succeed). Plaintiff is correct that conduct that "shocks the conscience" may, in some instances, give rise to a substantive due process claim. *See Davis v. Gallagher*, 951 F.3d 743, 752 (6th Cir. 2020) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)). But the "shocks the conscience" standard only applies to claims that do not arise under specific constitutional provisions. *Id*. Here, Plaintiff's malicious prosecution claim sounds in a more specific constitutional provision, the Fourth Amendment, so substantive due process is not the proper vehicle for raising this claim.

To set forth a § 1983 malicious-prosecution claim under the Fourth Amendment, the plaintiff must allege the following: 1) a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute; 2) a lack of probable cause for the criminal prosecution; 3) plaintiff suffered a deprivation of liberty as a consequence of liberty; and 4) the criminal proceeding was resolved in favor of the plaintiff. *Young v. Weirich*, No. 18-2157, 2018 WL 6173897, at *5 (W.D. Tenn. Nov. 26, 2018) (citing *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010). Here, there is a viable malicious prosecution claim under the Fourth Amendment. Plaintiff alleges that Defendant caused a warrant to be issued for Plaintiff's arrest for eleven (11) counts of animal cruelty and three (3) counts of dog fighting, in retaliation of Plaintiff filing for an injunction for the return of his dogs. (ECF No. 51, 15–16.) Based on this warrant, Plaintiff was arrested on October 29, 2021. *Id.* The state court proceeding found that there was no probable cause for Plaintiff's arrest and dismissed the case on April 14, 2022. *Id.*

11

Additionally, the Court disagrees with Defendant's contention that Plaintiff's malicious-prosecution claim is time-barred. In Tennessee, the statute of limitations for the tort of malicious prosecution runs for one year from the accrual of the cause of action.[10] Tenn. Code. Ann. § 28-3-104 (2017). Plaintiff's malicious-prosecution claim accrued[11] when the charge was dismissed on April 14, 2022. *See King*, 852 F.3d at 578–79 (holding that a plaintiff's claim of malicious prosecution accrues when the relevant indictment is dismissed). Plaintiff filed the instant Complaint alleging the malicious-prosecution claim on September 9, 2022, which is well within the one-year statute of limitations. Thus, this claim proceeds under the Fourth Amendment.

For the reasons set forth above, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's failure to give notice claim but **DENIES** it as to the malicious-prosecution claim.

### C. Claims Under Tennessee Governmental Tort Liability Act

Plaintiff concedes to Defendant's argument that his claim under Tennessee's governmental Tort Liability Act ("GTLA") was not raised in the Complaint. (ECF No. 51, 18.) As a result, the GTLA claim is **DISMISSED** as a matter of law.

### D. Claims Against the City for Failure to Train Under *Respondeat Superior* Theory

Defendant next argues that Plaintiff's claims against the City fail because it cannot be held liable under *respondeat superior*. (ECF No. 48, 9–10.) They alternatively claim that no triable issue exists as to Plaintiff's failure to train claims because there is a lack of factual support showing a causal connection between MAS training and the alleged violation. (*Id.* at 10–13.)

---

[10] Since federal statutes do not provide a statute of limitations for claims asserted under § 1983, state statute of limitations for personal-injury torts determines the length of the statute of limitations. *See Clark v. City of Memphis*, No. 2:18-cv-02676-JPM-dkv, 2019 WL 13414419, *3 (W.D. Tenn. Dec. 12, 2019) (internal citations omitted).

[11] Federal law governs the accrual date of a § 1983 cause of action. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007).

12

Municipalities cannot be held liable under *respondeat superior*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978); *see also Morgan v. Fairfield County, Ohio*, 903 F.3d 553, 565 (6th Cir. 2018). That said, municipalities can be held liable for harms caused 1) by their own direct actions; 2) by the implementation of municipal policies or customs; or 3) by employees whom the municipality has failed to adequately train. *Morgan*, 903 F.3d at 565. To hold a municipality liable for a constitutional violation under a failure to train theory, a plaintiff must point to a policy or custom of inadequate training or supervision that "amounts to deliberate indifference to constitutional rights." *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 994 (6th Cir. 2017). A plaintiff can demonstrate deliberate indifference by either showing that the municipality has failed to act in response to repeated complaints of constitutional violations by its officers or that it failed to equip law enforcement officers with specific tools to handle recurring situations. *See Ouza v. City of Dearborn Heights, Michigan*, 969 F.3d 265, 287 (6th Cir. 2020) (internal quotation marks and citations omitted).

Plaintiff bases his failure to train claim on the latter, alleging that the City did not provide any training to its animal control officers or police officers regarding entering private property to ascertain an animal's condition in non-emergency situations. (ECF No. 51, 5.)  In support, Plaintiff points to Smith's testimony that she did not observe emergency circumstances from the neighbor's yard before MAS and MPD officers entered the yard and seized the dogs. (*Id.* at 8.) Additionally, Plaintiff has also cited to relevant portions from the City's policies instructing MAS officers to seize pets if they observe specific indica of danger to animal welfare. (*Id.*)

As noted above, a reviewing court is tasked with determining if Plaintiff has cited to evidence in the record to support its position. *Cloverdale*, 869 F.2d at 937. The Court has reviewed the record in this case and can find no factual support for Plaintiff's position. Plaintiff invites the Court

to speculate about MAS training by arguing that "[i]n light of the duties the City has assigned to the animal control officers, the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the City can reasonably be said to have been deliberately indifferent to the need." (ECF No. 51, 8.) However, there is nothing in the record to support Plaintiff's arguments. Instead, Officer Smith's testimony indicates that she followed the policies set out by MAS, which indirectly shows the existence of adequate training rather than the lack thereof. Plaintiff failed to meet his burden and make an evidentiary showing of a causal connection between his alleged injuries and any policy or custom of Defendant. Thus, summary judgment is **GRANTED** as to this claim, and it is **DISMISSED**.

### E. *Res Judicata*

Defendant contends that Plaintiff's Fourth Amendment claim is barred by *res judicata* because he could have brought it in Circuit Court upon filing for injunctive relief. (ECF No. 48, 13–14.) Under the doctrine of *res judicata*, also known as "claim preclusion," "a final judgment on the merits bars a subsequent action between the same parties or their privities based upon the same claims or causes of action." *Briggs v. Cincinnati Ct. Index Newspaper*, 13 F. App'x 218, 220 (6th Cir 2001). Under Tennessee law, *res judicata* requires: "(1) that the underlying judgment was rendered by a court of competent jurisdiction; (2) that the same parties or their privities were involved in both suits; (3) that the same claim or cause of action was asserted in both suits; and (4) that the underlying judgment was final and on the merits." *See Regions Bank v. Prager*, 625 S.W.3d 842, 847–48 (Tenn. 2021) (citations omitted). *Res judicata* applies to bar the parties from both relitigating issues actually litigated as well as issues that could have been raised in an earlier action. *See J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996); *see also Briggs v. Cincinnati Ct. Index Newspaper*, 13 F. App'x 218, 220 (6th Cir 2001).

14

On October 12, 2021, Plaintiff filed suit in Circuit Court for the Thirtieth Judicial District at Memphis, Tennessee, seeking injunctive relief barring Defendant from destroying his property and requiring them to return his dogs. (ECF No. 51-1, 5 ¶ 16.) MAS was served with a writ of injunction on October 18, 2021. On November 3, 2021, Circuit Court entered a temporary injunction, enjoining MAS from disposing of Plaintiff's animals. (ECF No. 51-1, 5 ¶ 17.) Prior to the December 3, 2021 hearing on a permanent injunction, MAS consented to the return of the dogs to Plaintiff. (ECF No. 51-22, 1.) However, the dogs were not returned to Plaintiff until January 6, 2021, and then only seven (7) of the dogs were returned. (ECF No. 51-1, 5 ¶ 18.) Plaintiff learned that three dogs were euthanized, and one was "adopted out." (ECF No. 54, 17 ¶ 49.) While the proceedings played out in Circuit Court, an arrest warrant was issued for Plaintiff on October 28, 2021, and served on Plaintiff on December 3, 2021, after the Circuit Court proceedings concluded. (ECF No. 54, 16–17 ¶ 47.) (ECF No. 51-22, 3.) Subsequently, the charges of cruelty to animal and animal fighting were dismissed on April 14, 2022, the General Sessions Judge finding no probable cause. (ECF No. 54, 17 ¶ 48.)

While Plaintiff's current action is related to the state court cases, it does not amount to the same claim or cause of action as the previous matter. In the instant case, the Complaint alleges different issues and remedies than those alleged in the previous action for Injunctive relief. The action for Injunctive relief did not have at issue, or render a final decision regarding the lack of, or sufficiency of MAS's notice to Plaintiff about seizure and forfeiture of his property. Nor did the action for Injunctive relief have at issue, or render a final decision about the legality of Plaintiff's subsequent arrest and prosecution in Shelby County General Sessions Court. *See Donovan v. Thomas*, 105 F.3d 291, 296 (6th Cir. 1997). Thus, Defendant has not met his burden in showing that Plaintiff's Fourth Amendment claim is barred under *res judicata*.

15

Defendant's Motion for Summary Judgment based on *res judicata* is **DENIED**. Plaintiff's Fourth Amendment claim will proceed.

### F. Failure to Perfect Service on Unnamed Defendant Officer John Doe

Defendant also points out Plaintiff's failure to effectuate proper service on any individual officer for the actions alleged in Plaintiff's Complaint. (ECF No. 48, 9.) Rule 4 requires a plaintiff to perfect service on a defendant within 120 days of filing a complaint naming that defendant. Fed. R. Civ. P. 4(m). If a plaintiff is unable to show good cause for their failure to do so, then a court must dismiss the action as to that defendant. *See Garner v. City of Memphis*, 576 F. App'x 460, 463 (6th Cir. 2014); *Harris v. City of Cleveland*, 7 F. App'x 452, 456–57 (6th Cir. 2001); *Habib v. Gen. Motors Corp.*, 15 F.3d 72, 73 (6th Cir. 1994). It is immaterial whether the defendant had notice of the legal action despite lack of personal service. *Harris*, 7 F. App'x at 456. Here, Plaintiff commenced this action on September 22, 2022, filing suit against MPD police officers John Doe in their individual capacity for civil rights violations pursuant to § 1983. (*See* ECF No. 1.) Plaintiff has had sufficient opportunity but failed to make any effort to determine the identity of the John Doe officers and perfect service on them. In the absence of such service at this late stage in the litigation, this Court is without jurisdiction to render judgment against Defendants John Doe and must **DISMISS** the Complaint as to those Defendants.

### IV.   CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's claims under Tennessee Governmental Tort Liability Act, failure to give notice, failure to train, and malicious prosecution claim pursuant to the Fourteenth Amendment, but **DENIES** it as to Plaintiff's Fourth Amendment and malicious-prosecution claims under the Fourth Amendment. The Court also **DISMISSES** the Complaint as to the unnamed Defendants Officers

John Doe.

    **IT IS SO ORDERED** this 27th day of November, 2024.


                                                               *s/John T. Fowlkes, Jr.*
                                                               JOHN T. FOWLKES, JR.
                                                               UNITED STATES DISTRICT JUDGE